**Robert ROYALL, Plaintiff,**

v.

**Preston Robert TISCH, as Postmaster General, Defendant.**

**No. 83 CV 4863.**

United States District Court,
E.D. New York.

Sept. 30, 1987.

Andrew Mead Von Salis, Brooklyn, N.Y., for plaintiff.

Andrew Maloney, U.S. Atty., E.D.N.Y. (David M. Nocenti, Ass't U.S. Atty., of counsel), for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is an action brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–1 *et seq.*, as applied to federal employees, 42 U.S.C. § 2000e–16, alleging employment discrimination based on race. This case was tried before the Court without a jury. Having considered all of the relevant and competent evidence, the Court makes the following findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

## FINDINGS OF FACT

I. Background

Plaintiff, a black male, commenced employment with the United States Postal Service ("USPS") on June 25, 1979, and was assigned as a clerk in the Computer Markup Unit at the General Post Office in Brooklyn, New York. The Markup Unit was part of the Clerk Craft. In August 1980, the Markup Unit had three "tours of

duty:" 6:00 a.m. to 2:30 p.m., 10:30 a.m. to 7:00 p.m., and 2:30 p.m. to 11:00 p.m. In September 1980, plaintiff began a two-year day school program at Stenotype Academy, with classes between 9:00 a.m. and 3:00 p.m., Monday through Friday. Accordingly, plaintiff shifted to the last (2:30 p.m. to 11:00 p.m.) tour of duty. In addition, plaintiff requested and was granted permission to commence work at 3:30 p.m. instead of 2:30, taking one hour of leave without pay each day.

In January 1982, plaintiff heard that the Postal Service might consolidate the three tours of duty into a single, daytime tour. On February 11, 1982, plaintiff requested a temporary reassignment to the Mailhandler Craft, with the right to return to the Markup Unit without loss of seniority after completing the Stenotype Academy course. The Mailhandler Craft had a tour of duty that did not conflict with the hours of plaintiff's study program. On March 29, 1982 the USPS informed plaintiff that his request had been denied. Plaintiff was informed that he could transfer to the Mailhandler Craft with loss of seniority upon his return to the Clerk Craft. Plaintiff declined this offer. In April 1982, he withdrew from Stenotype Academy.

On November 13, 1982, plaintiff filed a formal EEO complaint, alleging that he had been denied a temporary assignment to the Mailhandler Craft because of his race. On December 27, 1982, the USPS rejected plaintiff's complaint. The EEOC affirmed this decision on September 29, 1983. Plaintiff commenced the present action *pro se* on November 4, 1983 against the USPS, alleging race discrimination by the USPS for its failure to provide a temporary reassignment with all seniority rights reserved.

On December 12, 1983, plaintiff was notified that he would be discharged from employment effective January 20, 1984. The notice stated that the reasons for the proposed action were plaintiff's refusal to follow instructions and failure to maintain a work schedule. The notice also set forth elements of plaintiff's employment record that were considered in taking the discharge action. Plaintiff's formal complaint regarding this termination was rejected as untimely by the USPS. On August 1, 1986, the EEOC vacated the decision, found the complaint to be timely, and remanded the action to the USPS.

In the meantime, regarding plaintiff's claim filed in this Court, the USPS had moved to dismiss the Complaint or, in the alternative, for summary judgment. Following appointment of counsel for plaintiff, this Court denied the USPS's motion, and granted plaintiff's request to amend the Complaint to substitute the Postmaster General as defendant. Defendant's motion for reconsideration was denied on January 23, 1986, and plaintiff was ordered to file an amended complaint within twenty days.

On February 11, 1986, plaintiff filed an Amended Complaint. Count I alleges racial discrimination based on defendant's refusal to grant plaintiff's request for a reassignment from the Clerk Craft to the Mailhandler Craft. Count II alleges racial discrimination based on defendant's harassment and discharge of plaintiff. The Complaint demands reinstatement with back pay, restoration of job status, compensatory damages, an injunction ordering prospective equal treatment, and costs and attorney's fees.

## II. Circumstances Surrounding the Claims

### A. *The Markup Unit*

The Markup Unit at the Brooklyn General Post Office was established in 1979. It was staffed with approximately twenty-five clerks, the majority of whom were black. Seniority was determined by test scores, and plaintiff was fourth or fifth in seniority at all relevant times.

Perhaps due to its recent origin, the Markup Unit was somewhat disorganized. Tour of duty periods were changed frequently, and the turnover rate of supervisory personnel was high. Judith Goldstein, whom plaintiff called as a witness, testified that the Unit was plagued by labor/management difficulties, and that morale was low. The clerks were particularly dissatisfied with Cora Aiken, a supervisor who was black.

## B. *Plaintiff Requests Reassignment*

In February 1982, plaintiff requested temporary reassignment to the Mailhandler Craft without loss of rights or seniority. The Agreement Between United States Postal Service and American Postal Workers Union, AFL–CIO ("National Agreement") provides that seniority "is computed from the date of career appointment in the clerk craft and level and continues to accrue so long as service is uninterrupted in the same craft and level in the same installation, except as otherwise specifically provided for." National Agreement, Article 37.2(D)(1)(a). The National Agreement further states that "a full-time regular employee begins a new period of seniority ... [w]hen the change is ... from one craft to another (voluntarily or involuntarily)." *Id.*, Article 37.2(D)(8)(a)(2). At the time of plaintiff's reassignment request, Vincent Militello was Director of Customer Services at the Brooklyn General Post Office. Mr. Militello was a high-level supervisor of the Markup Unit. He testified that he denied plaintiff's request because he believed that the terms of the reassignment would have violated the National Agreement. I find this testimony credible.

## C. *Plaintiff's Work Record*

Plaintiff's employment record is replete with references to improper conduct. A summary of the record, which was admitted into evidence, is as follows:

1. On February 6, 1980 plaintiff was given a direct order to label mail. He refused to do so, and then stated that he had a headache and requested to be sent to the medical unit. Plaintiff received a seven-day suspension for Disobeying a Direct Order and Feigning Illness, which was reduced to a letter of warning on March 12, 1980.

2. Plaintiff was late for work on ten occasions between March 20, 1980 and May 23, 1980. On May 23, 1980 he was given a seven-day suspension for tardiness, which was reduced to a letter of warning on June 18, 1980.

3. On six occasions between May 27, 1980 and July 16, 1980, plaintiff was late for work. Plaintiff was given a seven-day suspension for tardiness on July 21, 1980.

4. On November 3, 1980, plaintiff called and requested that he be allowed to take a personal day. When plaintiff refused to give a reason, this request was denied and plaintiff was ordered to come to work. Plaintiff never appeared. On November 4, 1980 plaintiff was given a seven-day suspension for being AWOL.

5. On April 13, 1981 plaintiff was ordered to label mail, but he refused to do so. Plaintiff was given a seven-day suspension for Disobeying a Direct Order, which was reduced to a three-day suspension on June 2, 1981.

6. On January 24, 1983, plaintiff was smoking in a non-smoking area, and refused to put out the cigarette when ordered to do so. Plaintiff received a seven-day suspension on January 24, 1983 for smoking in a prohibited area, which was reduced to a three-day suspension on July 15, 1983.

7. On March 10, 1983, plaintiff was given a travel slip to proceed to the City Division mail department to box mail. Plaintiff refused to accept the assignment after several requests to do so, and refused a direct order from his supervisor. Plaintiff received a seven-day suspension for insubordination on March 10, 1983.

8. On October 18, 1983, after having been granted two hours to work on grievances, plaintiff requested and received an additional twenty minutes to complete his work. Plaintiff did not report back until sixty minutes later. Plaintiff received a fourteen-day suspension for failure to follow instructions on October 19, 1983.

9. On October 22, 1983, plaintiff refused to obey a direct order to return to work.

10. On October 24, 1983, plaintiff failed to follow his supervisor's instructions that he perform his work and refused to obey a direct order to work one hour of mandatory overtime.

11. On October 28, 1983, plaintiff failed to show up for work despite having been told that he had to work.

12. Plaintiff was late for work on November 16, 1983, November 18, 1983, November 23, 1983 and November 30, 1983.

Plaintiff asserts that he was at all times a motivated and competent employee. He argues that, far from justifying his discharge, his poor employment record constitutes evidence of the very racial discrimination he alleges.

### D. *The Trial*

At the close of plaintiff's case, the defendant moved to dismiss the Complaint. Fed.R.Civ.P. 41(b). The Court denied the motion, ruling that plaintiff had established a *prima facie* case as to both Counts in the Complaint.

### DISCUSSION

Because the plaintiff has proved a *prima facie* case of racial discrimination, there is a rebuttable presumption that defendant unlawfully discriminated against him. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The burden thus shifts to the defendant to produce evidence that its treatment of plaintiff was supported by "legitimate nondiscriminatory, reason[s]." *Id.* at 254, 101 S.Ct. at 1094. The Court need not be persuaded that the defendant was motivated by the proffered reasons: it is sufficient if the defendant presents evidence to create a factual question as to whether discrimination took place. *Id.* at 254–55, 101 S.Ct. at 1094–95. If it does, the plaintiff's *prima facie* case is rebutted and the Court reaches the ultimate question in the case: was plaintiff "the victim of intentional discrimination[?]" *Id.* at 255–56, 101 S.Ct. at 1095. Plaintiff may prove this by showing that a discriminatory reason more likely than not motivated defendant, or by showing that defendant's explanation is not credible. *Id.* at 256, 101 S.Ct. at 1095. Bearing this in mind, I turn first to defendant's burden of production.

The defendant offers two reasons to explain its treatment of plaintiff. First, it asserts that it denied plaintiff's reassignment request because the terms of the request conflicted with with those in the National Agreement. I agree that the terms do conflict and thus conclude that a legitimate reason supports the refusal to grant plaintiff's request.

Second, defendant offers plaintiff's poor performance record as a reason for his discharge. The record is replete with references to tardiness and insubordination from February 1980 to November 1983. Such conduct is a legitimate, nondiscriminatory reason for plaintiff's termination. *Gilreath v. Butler Manufacturing Co.,* 750 F.2d 701, 702–03 (8th Cir.1984). Having concluded that defendant has presented evidence sufficient to rebut plaintiff's *prima facie* case on both Counts, I turn now to whether plaintiff has met his burden of persuasion.

Plaintiff asserts that he was a motivated and competent employee, as evidenced by his test scores. He asserts that Mr. Militello could have aided him in his effort to obtain a reassignment. He asserts that his poor work record was due to the incompetence of management and a lack of clearly articulated rules concerning standards of conduct. He argues that disciplinary actions taken against him constitute the harassment of which he complains. He concludes that the defendant's treatment of him is explainable by one factor only: race. I disagree.

Plaintiff has proved, at most, that the Markup Unit was organized poorly and run badly. Management, both black and white, was not responsive to employees. Disciplinary decisions were often arbitrary and irrational. Supervisors played favorites with lower-level employees. One ingredient notably missing, however, was racial discrimination.

There is no evidence that racism played any part in Mr. Millitello's decision to deny plaintiff's reassignment request. Indeed, Mr. Millitello had previously accommodated plaintiff's studies at the Stenotype Academy by permitting him to arrive daily one

hour late for work. Faced with plaintiff's transfer request, however, Mr. Millitello prudently refused to accede, because the request clearly conflicted with the terms of the National Agreement. Even then, Mr. Millitello tried to assist plaintiff by suggesting that he reassign—with loss of seniority—so that he could continue his studies. Plaintiff declined to do so.

Similarly, there is insufficient evidence to suggest that race played a role in plaintiff's discharge or that plaintiff was harassed because of his race. In fact, Sean O'Connor, a white clerk whom plaintiff called as a witness, testified that when Cora Aiken was supervisor, he felt that whites were being discriminated against. The evidence at most suggests that personal preferences of the supervisors played too large a role in treatment of employees. There is insufficient evidence, however, to suggest that race played a role in these employee decisions in general, or in the treatment of plaintiff in particular.

Plaintiff's disciplinary record was poorer than those of most of his fellow employees. Perhaps this was due to his inability to get along with his supervisors. Perhaps it was an accurate reflection of his performance. In either event, it, and the discharge that was based on it, were not products of racial discrimination.

For the foregoing reasons, the Court concludes that plaintiff has failed to prove that he was the victim of racial discrimination.[*] Accordingly, the Complaint is dismissed with prejudice and judgment will be entered in favor of the defendant

SO ORDERED.

---

[*] Defendant has also argued that the Court does not have subject matter jurisdiction over the harassment claim in Count II because of plaintiff's failure to exhaust administrative remedies. Defendant's position regarding subject matter jurisdiction apparently disregards a prior holding in this case. *See Royall v. United States Postal Service,* 624 F.Supp. 211, 214–15 (E.D.N. Y.1985). The Court need not address the exhaustion question because of the disposition of the harassment claim in defendant's favor and because defendant failed to raise this issue until the eve of trial.